# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| CLAYTON WILLIAMS, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) CIVIL ACTION NO.: 2:19-cv-1364-RMG<br>)<br>) **COMPLAINT**<br>)<br>) <u>JURY TRIAL DEMANDED</u> |
| vs. | )<br>) |
| VACATIONS INTERNATIONAL CLUB, LLC AND DOES 1 THRU 25 INCLUSIVE, | )<br>)<br>) |
| Defendants. | )<br>) |

The Plaintiff, Clayton Williams, on behalf of himself and all others similarly situated, by and through his undersigned counsel of record, makes this complaint for monetary damages and equitable and injunctive relief against VACATIONS INTERNATIONAL CLUB, LLC ("VIC"), and DOES 1 THRU 25 INCLUSIVE ("DOES") (hereinafter collectively "Defendants") for violations of 47 U.S.C. § 227, *et seq*. (Telephone Consumer Protection Act of 1991; hereinafter "TCPA").

## PRELIMINARY STATEMENT

1. This action arises under the federal Telephone Consumer Protection Act ("TCPA"), which is a remedial statute enacted in 1991 in response to consumer outrage over the proliferation of intrusive, nuisance telemarketing practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Among other things, the TCPA and its accompanying regulations prohibit telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the national Do Not Call Registry. The Do Not Call Registry is a database established to allow

1

consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written agreement. The TCPA also specifically prohibits the use of "any automatic telephone dialing system" to make calls to any "cellular telephone," other than to subscribers who have given "prior express consent," or in an "emergency," or to collect certain debts related to the federal government.

2.     Plaintiff CLAYTON WILLIAMS is one of the millions of consumers who have listed telephone numbers, including the number assigned to his cellular telephone, on the Do Not Call Registry. Nonetheless, he has received numerous telemarketing sales calls from one or more telephone call center(s), DOES, of Defendant VACATIONS INTERNATIONAL CLUB, LLC ("VCI"). These calls were made to his cellular telephone without prior express consent. None of the allowed exceptions to the TCPA prohibitions applied to the VCI calls.

3.     At the time of these calls, Defendant VCI knew or should have known that it and many of its call centers were flagrantly violating the TCPA in their efforts to sell VCI travel programs and subscriptions. However, VCI failed to take effective action to stop the violations, and instead gratefully accepted the new business it and its call centers generated through illegal means.

4.     The TCPA imposes liability for violations not only on businesses that place unlawful calls, but also on businesses on whose behalf and for whose benefit the calls are made.

5.     Vicarious liability is a critical feature of the TCPA. According to the Federal Communications Commission (hereinafter "FCC"), the agency charged with interpreting the statute, sellers like VCI are not exempt from liability simply because others violate the law on their behalf and for their benefit. This is so because the call center(s) that place illegal calls often are judgment proof and difficult to identify, and sellers are best positioned to monitor and control their activities. Under these circumstances, and in service of protecting consumers from the

2

nuisance of unwanted telemarketing, liability is imputed to the more reputable and more financially solvent sellers such as VCI.

6. Plaintiff brings this action on behalf of a proposed class defined below and seeks statutory damages, plus injunctive relief requiring VCI and Does to comply with the law.

## PARTIES

7. Plaintiff, CLAYTON WILLIAMS, ("Mr. Williams") is a citizen and resident of Charleston County, South Carolina.

8. Defendant, VACATIONS INTERNATIONAL CLUB, LLC ("VCI") is a South Carolina Limited Liability Company, which at all relevant times to this action was engaged in conducting extensive business in the State of South Carolina.

9. The true names and capacities of Defendants sued as DOES 1 THRU 25 INCLUSIVE ("DOES") are unknown to Plaintiff. Plaintiff is informed and believes, and on that basis allege, that these entities are also responsible and culpable for the conduct alleged herein and are upon information and belief one or more telephone call centers hired by VCI to place unsolicited telephone calls to individuals. Plaintiff will seek leave to amend this Complaint once the true identities of these entities are ascertained.

## JURISDICTION

10. The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, because this action involves violation of a federal statute, the TCPA.

11. Additionally, the Court has jurisdiction pursuant to 47 U.S.C. § 227.[1]

---

[1] In *Mims v. Arrow Financial Services*, *LLC*, 132 S.Ct. 740 (2012), the U.S. Supreme Court held that federal courts possess federal question jurisdiction over private TCPA cases.

3

12.	Defendants conduct business in South Carolina, engage in business in whole or in part in South Carolina, and have committed tortious conduct in this state and are subject to jurisdiction in South Carolina under the State's Long-Arm Statute, S.C. Code § 36-2-803.

13.	Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c), as the acts and omissions forming the basis of the claims in this action occurred in substantial part in this District, where the Plaintiff resides.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227**

14.	In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227, in response to a growing number of consumer complaints regarding certain telemarketing practices.[2]

15.	The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

16.	Pursuant to section 227(a)(1), an autodialer or automatic telephone dialing system is defined as, "equipment which has the capacity: (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." The term extends to any equipment that has the capacity to dial numbers without human intervention.[3] This term is also understood to include "predictive dialers" with the capacity to target phone calls based on a database of telephone subscribers.[4]

---

[2] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227. The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201, *et seq*.

[3] *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C.R. 14014, 14093 (2003).

[4] *Reyes v. BCA Fin. Servs., Inc.*, 312 F.Supp.3d 1308 (S.D. Fla., 2018).

4

17. According to findings by the FCC, the agency Congress vested with the authority to issue regulations implementing the TCPA, such calls are prohibited because Congress found automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

18. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[5] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[6]

19. Section 227(c)(5) of the TCPA allows a person or entity, if otherwise permitted by the laws or rules of court of a State, to bring in an appropriate court of that State, (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions.

20. The FCC has previously found that "prior express consent provided to a particular creditor will not entitle that creditor (or third-party collector) to call a consumer's wireless number on

---

[5] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).
[6] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

behalf of other creditors, including on behalf of affiliated entities."[7]

21. In the event that the violation(s) were made knowingly or willfully, the Court has the discretion to treble the statutory damages for each such violation(s).

22. On May 9, 2013, the FCC released a Declaratory Ruling wherein it confirmed that "while a seller does not generally initiate calls made through a third-party telemarketer, it nonetheless may be vicariously liable under the federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."[8]

23. Furthermore, consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the national Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). According to the Federal Trade Commission, the Registry, which was established in 2003, has over 235,302,818 active registrations in 2018. During 2018 alone, approximately 5.49 million numbers were added. (*See* https://www.ftc.gov/news-events/press-releases/2018/12/ftc-releases-fy-2018-national-do-not-call-registry-data-book-mini).

24. These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id*.

25. Because a telephone subscriber listed on the Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the Registry must

---

[7] *See also Id.* at 565, n. 38 and *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 TCPA Rep. 2522, 2013 WL 1899616 (S.D. Fla. May 8, 2013).

[8] *2013 Declaratory Ruling*, -- FCC Rcd. --, FCC 13-54 (F.C.C. May 9, 2013); *See also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012) (holding that "[i]ndemnity may be automatic under ¶ 10 of the 2008 TCPA Order, which states that calls placed by a third-party collector on behalf of a creditor are treated as having been made by the creditor itself").

take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id* at § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. *Id*.

26. A person, whose number is on the Registry and has received more than one telephone solicitation within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek the greater of actual damages or $500.00, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

27. Telemarketers who wish to avoid calling numbers listed on the Registry can easily and inexpensively do so by "scrubbing" their call lists against the Registry database. The scrubbing process identifies those numbers on the Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

28. To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

29. Regulations implementing the TCPA also require entities to maintain internal Do Not Call registries. 47 C.F.R. § 64.1200(d). Once an entity receives a request from a residential telephone subscriber not to receive calls, the number must be placed on the entity's internal registry within a reasonable time, not to exceed thirty days from the date of the request. *Id*. at § (d)(3).

30. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

31. The provision that establishes a private right of action against an entity that violates the Registry restrictions provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C.

§ 227(c)(5). Likewise, 47 C.F.R. § 64.1200(d)(3) provides that once a number is added to an entity's internal Do Not Call Registry, "the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request."

32. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

33. The agency reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

34. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of 47 U.S.C. § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of 47 U.S.C. § 227(c), for calls placed "on behalf of" the seller. In re Joint Pet. Filed by Dish Network, 28 FCC Rcd. 6574 (2013).

## FACTUAL ALLEGATIONS RELATED TO TCPA CLAIMS

35. At all times relevant, Plaintiff was an individual residing in the State of South Carolina.

36. Plaintiff is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153(10).

37. Defendants are, and at all times mentioned herein were, corporations and each Defendant a "person" as defined by 47 U.S.C. § 153(10).

38. Beginning in October 2018, Mr. Williams received numerous telemarketing calls on his Verizon cellular telephone line, (XXX) XXX-1015, a number he had listed on the Do Not Call Registry since 2005.

39. These calls, which included at least two calls in a twelve-month period, were placed by VCI or its authorized telemarking agent, one or more of the unknown DOES, in an effort to sell Mr. Williams a timeshare vacation package.

40. Because Mr. Williams did not provide VCI with a signed, written agreement to receive telemarketing calls from VCI, the calls to his Verizon cellular telephone violated the TCPA.

41. VCI is liable for the calls because: a. DOES placed the calls on behalf of, and for the benefit of VCI, because the calls were placed to sell VCI timeshare vacation subscriptions; b. DOES placed the calls under VCI's actual or apparent authority because DOES were authorized to market and sell VCI timeshare vacation subscriptions and to hold themselves out as VCI; and c. VCI ratified DOES' illegal conduct by accepting the illegal business so generated and rewarding them with payments for that business.

42. VCI sells its vacation timeshare packages through one or more telemarking service call centers, including those owned and operated by DOES.

43. VCI authorized these telemarketing service companies to market on its behalf and to use the VCI trade name, trademark, or service mark.

44. VCI knew or should have known that its telemarketing partners (DOES), were engaging in telemarketing in violation of the TCPA.

45. Because VCI failed to take effective action to end the violations, the Plaintiff and

putative class members received telemarketing calls from one or more of the DOES.

## Class Action Allegations

46. Plaintiff brings this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

> All persons throughout the United States to whom, at any time within the applicable limitations period, more than one call within any twelve-month period was placed by one or more of the DOES or at the direction of or by VCI.

47. Plaintiff reserves the right to modify this class definition as he obtains relevant information, including telemarketing call records, through discovery.

48. The proposed classes can be identified through telephone records and databases used in transmitting the telemarketing calls.

49. The number of class members is believed to be in the thousands, rendering the classes so numerous that individual joinder of all class members is impracticable.

50. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

> a. Did the DOES place telemarketing calls to Plaintiff and class members?
>
> b. Is VCI liable under 47 U.S.C. § 227(c) for telemarketing calls placed by the DOES?
>
> c. Did the DOES place the calls under VCI's actual authority?
>
> d. Did the DOES place the calls under VCI's apparent authority?
>
> e. Did VCI ratify the DOES' illegal conduct by accepting the benefit of its illegally-generated business and failing to exercise its authority to end the violations?
>
> f. Were the DOES' calls placed for VCI's benefit or on its behalf?
>
> g. Are the DOES liable under 47 U.S.C. § 227(c) for telemarketing calls?

51.     Plaintiff's claims are typical of the claims of the class. Plaintiff received VCI's telemarketing calls on a number that was assigned to and operated by a cellular telephone service.

52.     Plaintiff is an adequate class representative because his interests do not conflict with class members' interests, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in TCPA and in class action litigation.

53.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

54.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to pursue individual litigation; the low dollar-value of individual claims; the lack of an attorney fee-shifting provision in the TCPA; the fact that class members are unlikely to know that their rights have been violated; and the fact that few, if any, recipients of the DOES' or VCI's telemarketing calls have brought private TCPA enforcement actions.

**FOR A FIRST CAUSE OF ACTION**
**(Negligent Violations of The Telephone Consumer Protections Act of 1991 United States Code Section 47-5-227, *et seq*.)**

55.     The Plaintiff incorporates herein by reference the foregoing paragraphs of this Complaint as if fully stated herein.

56.     For the twelve months prior to the date of the filing of this Complaint, the Plaintiff was repeatedly harassed by telephone calls, initiated by VCI and their agents, DOES, to their residential or cellular telephone lines using an automated dialing system to deliver messages concerning VCI vacation packages.

57.     VCI and their agents, DOES, made automated telephone calls to the cellular telephone

11

numbers of the Plaintiff using equipment that upon information and belief has and had the capacity to store or produce telephone numbers to be called by way of a random or sequential number generator or from a database of potential sales leads who did not have a preexisting business relationship with VCI.

58.     The forgoing acts and omissions of VCI and their agents, DOES, constitute numerous and multiple negligent violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227, *et seq*.

59.     As a result of VCI's and their agents', DOES', negligent violations of 47 U.S.C. § 227, *et seq*., the Plaintiff is entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

60.     The Plaintiff is also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

61.     The Plaintiff is also entitled to an award of attorneys' fees, costs, and expenses.

## FOR A SECOND CAUSE OF ACTION
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act of 1991 United States Code Section 47-5-227, *et seq*.)**

62.     The Plaintiff incorporates herein by reference the foregoing paragraphs of this Complaint as if fully stated herein.

63.     VCI and their agents, DOES, willfully and/or knowingly violated the regulations prescribed under the TCPA.

64.     The forgoing acts and omissions of VCI and their agents, DOES, constitute numerous and multiple knowing and willful violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227, *et seq*.

65. As a result of VCI's and their agents', DOES', knowing and willful violations of 47 U.S.C. § 227, *et seq*., the Plaintiff is entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

66. The Plaintiff is also entitled to and does seek injunctive relief prohibiting VCI and DOES from future violations of the TCPA.

67. The Plaintiff is also entitled to an award of attorneys' fees, costs and expenses.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests that the Court grant the Plaintiff the following relief against VCI and DOES:

A. As a result of VCI's and DOES' negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to $500.00 in statutory damages for each and every call that violated the Telephone Consumer Protection Act of 1991, along with attorneys' fees, costs, and expenses;

B. As a result of VCI's and DOES' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the Telephone Consumer Protection Act of 1991, along with attorneys' fees, costs, and expenses;

C. Injunctive relief prohibiting such violations of the Telephone Consumer Protection Act of 1991; and

D. For such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Respectfully Submitted,

KNOWLES LAW FIRM, PC

*/s/ Brian M. Knowles*
BRIAN M. KNOWLES
Federal ID No.: 9694
768 St. Andrews Blvd., Charleston, SC 29407
P.O. Box 50201, Summerville, SC 29485
T: 1 (843) 810-7596
F: 1 (877) 408-1078
brian@knowlesinternational.com
www.knowlesinternational.com

THE LAW OFFICE OF ROBERT M. TURKEWITZ, LLC

*/s/ Robert M. Turkewitz*
ROBERT M. TURKEWITZ
Federal ID No.: 4902
768 St. Andrews Blvd., Charleston, SC 29412
T: 1 (843) 628-7868
F: 1 (843) 277-1438
rob@rmtlegal.com
www.rmtlegal.com

ABRAMS CYBER LAW & FORENSICS, LLC

*/s/ Steven M. Abrams*
STEVEN M. ABRAMS
Federal ID No. 10374
P.O. Box 305, Sullivans Island, SC 29482
T: 1 (843) 216-1100
F: 1 (843) 278-5107

Attorneys for the Plaintiffs

Charleston, South Carolina
May 9, 2019